In re the MARRIAGE OF Patricia Ann GADDIS and Gary Lyle Gaddis.

Patricia Ann GADDIS,
Petitioner-Appellant,

v.

Gary Lyle GADDIS,
Respondent-Respondent.

No. WD 32599.

Missouri Court of Appeals,
Western District.

April 13, 1982.

Richard F. Halliburton (argued), Legal Aid of Western Missouri, Kansas City, Frederick W. Martin III, Legal Aid of Western Missouri, Warrensburg, for petitioner-appellant.

Before NUGENT, P. J., TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Patricia Ann Gaddis, appellant herein, complains of the failure and refusal of the trial court to award her attorney a fee in an action for dissolution of marriage. We affirm.

On July 30, 1980, Mrs. Gaddis, represented by Legal Aid of Western Missouri, filed her petition for dissolution of marriage requesting custody of the three minor children of the marriage, child support, a share of the marital property and "[a]ttorney fees and court costs with the attorney fees being paid directly to Petitioner's attorney, Frederick W. Martin III, pursuant to § 452.355 R.S.Mo. (1978)". At the default hearing of January 22, 1981, Mrs. Gaddis, the only witness at trial, testified that the income for her and the children, ages one, three and five, was $290 per month in Aid to Dependent Children benefits and $162 per month in food stamps. Mr. Gaddis, employed as a driver for a meat company for approximately three years, had a net weekly income of $285. The marital property consisted of a 1963 pickup truck, tools, household goods, personal effects and a house. Although two monthly mortgage payments had been paid on the house, no payments had been made for over a year. Marital debts included $38,000 to the mortgage company, $1,700 to a realty company, $2,142 to finance companies, $1,667.50 in medical expenses and $392 in charge accounts. In evidence was a retainer agreement between Mrs. Gaddis and her attorney in which she agreed to turn over any attorney's fees awarded by the court in this case to Legal Aid of Western Missouri.

At the hearing Mrs. Gaddis' attorney asked:

Q. (By Mr. Martin) Mrs. Gaddis, are you asking the Court to dissolve your marriage with the respondent, to award you custody of the three minor children, and to give your husband reasonable visitation rights with those children, to order him to pay support which would come out to the amount of $85 per month per child beginning on February 1st, 1981 to be paid through the Ray County Circuit Clerk as trustee for you, to award you marital property now in your possession, which would include the residence, the other household furnishings that you now have, and your personal effects, to award your husband the property that he now has in his possession, to order you to pay the two debts on the real estate to Mercantile Mortgage and Van Winkle, and to order your husband to pay all remaining debts, to order him to pay an attorney fee of $300 directly to me in my own name, and to assess court costs against you?

A. That's correct.

MR. MARTIN: I have no other questions.

THE COURT: The Court is not going to make any allowance for the Legal Aid attorney's fee. . . .

The trial judge awarded custody of the children to Mrs. Gaddis, ordered Mr. Gaddis to pay $20 per week per child for their support, divided the marital property, or-

dered Mrs. Gaddis to pay the debts to the mortgage and realty companies and ordered Mr. Gaddis to pay the remaining debts. Costs were assessed against Mrs. Gaddis. The court made no award of an attorney's fee.

On appeal Mrs. Gaddis contends that the trial court's denial of her request for an attorney's fee was against the weight of the evidence and an abuse of the court's discretion under § 452.355 [1], and that the trial court incorrectly declared and applied the law because representation by a Legal Aid attorney is not a relevant factor in determining the propriety or amount of an award of attorneys' fees under § 452.355.

On this review an appellate court may reverse the trial court's judgment only if it is against the weight of the evidence or if it erroneously declares or applies the law. The resolution of this case depends on the answers to two questions: First, did the fact that the petitioner was represented by a Legal Aid attorney preclude an award of an attorney's fee for services in the dissolution action? Second, in the circumstances, did the trial court abuse its discretion in refusing to award an attorney's fee?

■ The record is meager concerning the trial judge's meaning. Assuming, as does counsel, that the judge refused to allow petitioner's attorney an attorney's fee simply because he was a Legal Aid lawyer, we have no doubt that the court to that extent abused its discretion.

To our knowledge, the question of an allowance of an attorney's fee to Legal Aid has arisen only once in a Missouri appellate court. The Supreme Court en banc in *Ehlert v. Ward*, 588 S.W.2d 500, 504–05 (Mo. 1979), held that Legal Aid was not entitled to an attorney's fee under the federal Truth in Lending Act. At 505 the court said:

Because appellant has not paid or become obligated to pay attorney fees to the Legal Aid of Western Missouri, an award of attorney fees to her is not required to make her whole. An award to her would impose a penalty on respondent so that she might receive an unjust enrichment. Amici suggest that attorney fees be awarded to appellant's attorneys; not to appellant. This would, of course, eliminate unjust enrichment of appellant. However, the statute (15 U.S.C.A. § 1640(a)(3)) provides that the potential liability of the creditor for attorney fees is to the debtor; not to the debtor's attorney. Moreover, the attorneys are not parties to this suit; they sought no relief other than for their client, and a judgment in their favor for fees would be beyond the scope of the pleadings and void.

That case is clearly distinguishable and, therefore, not controlling. In the first place, Legal Aid was not denied a fee because the debtor's attorney was Legal Aid as appears to have been the case here. Moreover, unlike the Missouri dissolution statute, the federal act made no provision for payment directly to the complainant's attorney. Also, the petitioner here, unlike the complainant in *Ehlert*, had an agreement with her Legal Aid attorney, who had the statutory right to enforce an allowance in his own name, obviating any question of unjust enrichment.

Beyond those considerations, however, are the economic realities of legal representation in these days and the maturing recognition of the morality and the social utility of legal assistance for those financially unable to retain counsel. Recent dissolution and divorce cases in other jurisdictions attest to this development.

In *Ferrigno v. Ferrigno*, 115 N.J.Super. 283, 279 A.2d 141 (N.J.Super.Ch.Div.1971),

---

1. 452.355, R.S.Mo., 1978, provides:

    The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

the court addressed the question of the right of a Legal Services counsel to receive a fee when the facts indicated that the defendant husband had the financial resources to pay that fee. There the parties were fifty-eight years old and had been married in 1934. The wife earned $59.77 a week. The defendant husband's earnings, alleged to be equally low, were, however, of uncertain amount but sufficient for such luxuries as a twenty-four-year-old mistress, a child by her, and a 1971 autovan. The court observed that "[h]is purchasing power on a miniscule income is reminiscent of the miracle of the five barley loaves and two small fishes. *Bible* (*King James Version*), *Matthew* 14.15–21; *Mark* 6.34–44; *Luke* 9.12–17; *John* 6.5–13."

The wife was represented by an attorney affiliated with the Essex County Legal Services Corporation, a private, nonprofit corporation financed primarily with federal funds. She sought an attorney's fee of $100. New Jersey's rule permitted the award of counsel's fees in a matrimonial action in the discretion of the court.

In approving an allowance of an award of an attorney's fee, the court said at 142:

The law is not static; it changes to meet changing social needs. A considerable number of divorces in New Jersey are now obtained by indigents represented by Legal Services attorneys. I do not believe that a defendant husband against whom a judgment for divorce has been awarded in a contested case should reap the benefits of free legal representation

to his wife. Nor should a husband be encouraged to litigate under the assumption no counsel fee will be adjudged in favor of the indigent plaintiff represented by Legal Services. Put in another way, the public should be relieved from the financial burden of obtaining an indigent plaintiff's divorce or successfully defending against a husband's complaint, to the extent that the husband is able to pay all or part of her attorney's fee. The taxpayer has an interest in recovering where possible a portion of the costs in these situations.

*Accord, Butler v. Butler,* 376 So.2d 287 (Fla. App.1979); *Love v. Love,* 370 So.2d 1231 (Fla.App.1979)[2], both Florida decisions.

We conclude, therefore, that under § 452.355, a Legal Aid attorney as well as any other attorney may be granted an allowance for services rendered to a party in a dissolution action. The fact that a party is represented by Legal Aid plays no part in the balancing of all the "relevant factors" mentioned in § 452.355.

■ Which brings us to the second question: whether the trial court in this case abused its discretion in denying allowance of an attorney's fee. We conclude that it did not.

The Missouri Supreme Court en banc in *Kieffer v. Kieffer,* 590 S.W.2d 915, 918–19 (1979), noted that § 452.355 varies from the Uniform Marriage and Divorce Act[3] in that our statute provides that the court may

---

**2.** *But See, Thompson v. Thompson,* 630 P.2d 243, 244 (Mont.1981), where the Montana Supreme Court distinguished *Ferrigno* as being from a jurisdiction which has not adopted the Uniform Marriage and Divorce Act. Finding that under the Uniform Act the purpose of an award of attorney's fees is to equalize the status of the parties to the dissolution proceeding, that court held that the party who has received assistance of Legal Services has removed any personal necessity for the payment of fees. We reject such a pinched view. Since the attorney may enforce the order directly, our statute must be viewed as having another purpose; to be sure that the attorney is compensated and that "those benefited by a suit should contribute equally towards the cost of receiving the benefit". Note, *Awards of Attorney's Fees*

*to Legal Aid Offices,* 87 Harv.L.Rev. 411, 420 (1973).

**3.** Section 313 of the Uniform Marriage and Divorce Act is:

The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this Act and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney who may enforce the order in his name.

consider *all* relevant factors rather than just the financial resources, thereby allowing "the trial judge considerable discretion in awarding attorney's fees". The court held at 919:

> The record provides this Court no clue as to all of the factors the trial court considered.
>
> However, § 402.355 does make clear that the financial resources of the parties must be considered. Other factors are to be taken into account as well. How they balance will vary from cases to case and certainty of result cannot be projected. Only when the trial court is shown to have abused the broad discretion with which it is vested in this regard should its award (or orders) be overturned.

Under the facts of this case, we find no abuse of the trial court's discretion. Because the financial resources of Mr. Gaddis were meager[4], it was within the court's discretion not to burden him with another debt.

Accordingly, we affirm the judgment of the trial court.

All concur.

---

**4.** The decree awarded Mr. Gaddis the 1963 pickup truck, tools, a television set and his personal effects. His $285 net weekly pay was reduced by $60 for child support payments, and he was ordered to pay $4,165.65 in marital debts.