### LAURA BENAVIDES *v.* ALVARO BENAVIDES (4933)

HULL, SPALLONE and BIELUCH, Js.

Argued March 11—decision released June 2, 1987

*Claudine Siegel,* with whom, on the brief, was *Julia Bradley,* for the appellant (plaintiff).

*Alvaro Benavides,* pro se, the appellee (defendant.)

*Shelley Geballe, Martha Stone, Susan Weisselberg, Jon Alander, Katharine H. Robinson, Stephen F. Frazzini* and *Ira Horowitz* filed a brief for the Connecticut Civil Liberties Union Foundation et al. as amici curiae.

SPALLONE, J. The plaintiff is appealing from the decision of the trial court awarding counsel fees.

The plaintiff, in a postjudgment action, successfully pursued her claim for custody of the parties' minor children and for back child support under General Statutes § 46b-61 and under the Uniform Child Custody Jurisdiction Act, General Statutes §§ 46b-90 et seq. The plaintiff was represented by Connecticut Legal Services, Inc., a federally funded nonprofit organization which provides legal representation without cost to persons unable to afford private counsel. The plaintiff claimed attorney's fees pursuant to General Statutes § 46b-62 and filed an affidavit of legal services rendered, including time sheets listing such services. The plaintiff claimed attorney's fees in the amount of $2100 which the trial court found to be justified and to be a "modest sum compared with what some of the divorce lawyers of [counsel's] experience would have charged."

Nonetheless, the court reduced the amount awarded because her counsel was employed by a federally funded nonprofit organization. The court stated: "I think I'll cut the fees down because of its nonprofit status. If Mrs. Siegel was a private attorney then I would certainly have no hesitation [in] awarding twenty-one hundred dollars. But what I think I'm going to do is simply cut in half, again without depreciating in any way her services because she's not getting the money anyway, and make it for an order of one thousand fifty. The fifty percent credit representing in some off-hand way in my own mind that since it is a federally funded organization that probably under all the circumstances a thousand fifty is fair."

The plaintiff appeals from the 50 percent reduction in the amount of counsel fees claiming the trial court erred in arbitrarily reducing by half what it found to be justifiable and reasonable counsel fees under the circumstances in this case. We agree with the plaintiff and find error.

Although Connecticut courts have not addressed this issue, we may look to other jurisdictions for guidance. In family matters, the majority of courts have held that the award of counsel fees to the prevailing party is proper even when that party is represented without fee by a nonprofit legal services organization. *Martin* v. *Tate,* 492 A.2d 270, 274 (D.C. App. 1985); *Butler* v. *Butler,* 376 So. 2d 287 (Fla. App. 1979); *Love* v. *Love,* 370 So. 2d 1231 (Fla. App. 1979); *In re Marriage of Brockett,* 130 Ill. App. 3d 499, 501, 474 N.E.2d 754 (1984); *In re Marriage of Gaddis,* 632 S.W.2d 326, 328–29 (Mo. App. 1982); *Ferrigno* v. *Ferrigno,* 115 N.J. Super. 283, 284–85, 279 A.2d 141 (1971); cf. *Thompson* v. *Thompson,* 630 P.2d 243, 244 (Mont. 1981) (no award of attorney's fees to legal services organization under

Uniform Marriage and Divorce Act because party receiving legal aid cannot meet required showing of necessity under statute).

Courts have ruled similarly in nonfamily contexts. *Sellers* v. *Wollman,* 510 F.2d 119, 123 (5th Cir. 1975) (proper to award attorney's fees to legal aid society in action under Truth in Lending Act, 15 U.S.C. § 1640 [a] [2]); accord *Manning* v. *Princeton Consumer Discount Co.,* 533 F.2d 102, 106 (3rd Cir. 1976), cert. denied, 429 U.S. 865, 97 S. Ct. 173, 50 L. Ed. 2d 144 (1976); *Folsom* v. *Butte County Assn. of Governments,* 32 Cal. 3d 668, 681–84, 186 Cal. Rptr. 589, 652 P.2d 437 (1982) (suit to enforce public transportation law); *Wiginiton* v. *Pacific Credit Corporation,* 2 Hawaii App. 435, 446–47, 634 P.2d 111 (1981) (unfair and deceptive collection practices action); *Linthicum* v. *Archambault,* 379 Mass. 381, 388, 398 N.E.2d 482 (1979) (consumer protection action); *Shands* v. *Castrovinci,* 115 Wis. 2d 352, 359–61, 340 N.W.2d 506 (1983); (landlord-tenant action).

In *Blum* v. *Stenson,* 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984), the United States Supreme Court held that an award of attorney's fees to a nonprofit legal service organization in a civil rights action was to be calculated according to the prevailing market rate. The court concluded from the legislative history of 42 U.S.C. § 1988 that "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." Id., 894. Before the Supreme Court decided *Blum,* various circuit courts of appeal had also concluded that nonprofit legal service organizations are eligible for attorney's fees under federal civil rights laws. *Ramos* v. *Lamm,* 713 F.2d 546, 551–52 (10th Cir. 1983); *Gautreaux* v. *Chicago Housing Authority,* 690 F.2d 601, 613 (7th Cir. 1982), cert. denied, 461 U.S. 961, 103 S. Ct. 2438, 77

L. Ed. 2d 1322 (1983); *Copeland* v. *Marshall,* 641 F.2d 880, 898–900 (D.C. Cir. 1980) (en banc); *Perez* v. *Rodriguez Bou,* 575 F.2d 21, 24 (1st Cir. 1978); *Torres* v. *Sachs,* 538 F.2d 10, 12 (2d Cir. 1976) (attorney's fees under Voting Rights Act of 1965, 42 U.S.C. § 1973l [e]); *Tillman* v. *Wheaton-Haven Recreation Assn., Inc.,* 517 F.2d 1141, 1147–48 (4th Cir. 1975). These courts relied on both the legislative history of the civil rights acts and independent policy grounds in reaching this conclusion.

We are aware that indigents are represented by legal services attorneys in a large number of family relations matters. It would be unreasonable to allow a losing party in a family relations matter to reap the benefits of free representation to the other party. A party should not be encouraged to litigate under the assumption that no counsel fee will be awarded in favor of the indigent party represented by public legal services; see *Ferrigno* v. *Ferrigno,* supra; or as in this case, that a reasonable fee will be discounted for the same reason. "Put in another way, the public should be relieved from the financial burden of obtaining an indigent plaintiff's divorce or successfully defending against a husband's complaint, to the extent that the husband is able to pay all or part of her attorney's fees. The taxpayer has an interest in recovering where possible a portion of the costs in these situations." Id.[1]

An award of counsel fees that does not discriminate against nonprofit legal service entities will encourage nonprofit counsel to expend its resources in the representation of those clients who are unable to afford pri-

---

[1] As one commentator has stated: "Legal services for the poor is free only to the indigent person. Someone has to pay for it and that someone—the taxpayer—should be compensated, the compensation being the increased effectiveness of the legal services program." G. McLaughlin, "The Recovery of Attorney's Fees: A New Method of Financing Legal Services," 40 Fordham L. Rev. 761, 784 (1972).

vate counsel in disputed child custody and child support enforcement litigation. The purposes of such acts as the Uniform Child Custody Jurisdiction Act in Connecticut, General Statutes § 46b-91, are advanced and are made more available to the poor where there is an expectancy that the nonprofit legal services will recoup at least part of its resources through an award of counsel fees to its client. Furthermore, a realization that the opposing party, although poor, has access to an attorney and that an attorney's fee may be awarded deters noncompliance with the law and encourages settlements.

We note that the criteria set forth in General Statutes § 46b-82 do not include the court's consideration of counsel's status as a nonprofit or publicly funded organization when making an award of counsel's fees. The court in making its determination "may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in Sec. 46b-82." General Statutes § 46b-62. Section 46b-82 sets forth the criteria for awarding alimony. Therefore, in addition to the financial ability of the parties, the court must also consider the length of the marriage, causes for the dissolution, age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and, in the case of a parent to whom custody of minor children has been awarded, the desirability of such parents securing employment. General Statutes § 46b-82.

The trial court, in expressly stating that it was halving the award because of "its nonprofit status" and "since it is a federally funded organization," introduced a factor not contained in General Statutes §§ 46b-62 and 46b-82. The language of §§ 46b-62 and 46b-82 makes no provision for any consideration of the status of the legal services rendered, be it private coun-

sel or nonprofit counsel. While the court in the exercise of its inherent equitable powers may consider factors other than those enumerated in the statutes if such factors are appropriate for a just and equitable resolution of the marital dispute; *Robinson* v. *Robinson,* 187 Conn. 70, 72, 444 A.2d 234 (1982); *Osborne* v. *Osborne,* 2 Conn. App. 635, 642, 482 A.2d 77 (1984); the court here made no effort to establish how a reduction in half of attorney's fees solely because of the nonprofit status of the plaintiff's counsel was appropriate for a just and equitable resolution of the dispute. We therefore cannot consider such a reduction to be anything other than arbitrary and erroneous. See *In re Marriage of Brockett,* supra, (error for trial court to refuse attorney's fee to nonprofit organization where statute does not expressly limit a fee awarded to a legal services office).

There is error, the order for counsel fees is set aside and the case is remanded with instructions to award counsel fees in the amount of $2100.[2]

In this opinion the other judges concurred.

---

[2] To avoid a windfall to the plaintiff, the award of attorney's fees should be made directly to the organization providing the legal services. See *Dennis* v. *Chang,* 611 F.2d 1302, 1309 (9th Cir. 1980); *Hairston* v. *R & R Apartments,* 510 F.2d 1090, 1093 (7th Cir. 1975).